**Ray Dale HOOKS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–00–00088–CR.

Court of Appeals of Texas, Texarkana.

Submitted Feb. 22, 2001.

Decided March 7, 2001.

Kevin McCarter, Law Office of Terry L. Cox, Marshall, for appellant.

**610**

Richard Berry Jr., Criminal District Attorney, Al Davis, Assistant District Attorney, Marshall, for the State.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS.

Ray Dale Hooks appeals his conviction for intoxication manslaughter. TEX. PEN. CODE ANN. § 49.08 (Vernon Supp. 2001). Hooks was indicted on two counts, the first for intoxication manslaughter and the second for leaving an accident scene. Hooks pleaded guilty to the second count, and after pleading not guilty to the first count, was tried before a jury. The jury found Hooks guilty of both counts and assessed punishment at life in prison.[1] On appeal Hooks challenges both the legal and factual sufficiency of the evidence and contends that the trial court erred in denying his motion for continuance because of pretrial publicity regarding a similar case. He also contends that the trial court committed cumulative harmful error. We overrule each of Hooks' points and affirm the judgment of the trial court.

On the evening of March 14, 1999, Roger Carney and his common-law wife, Lari Patterson, were traveling east on U.S. Highway 80 from Longview to their home in Marshall, Texas. Following a minor altercation during the trip, Patterson stopped at a convenience store to purchase a snack. While in the store, Carney left the vehicle and began walking toward Marshall, proceeding eastbound on the grassy edge abutting the concrete shoulder of U.S. Highway 80. Despite Patterson's repeated attempts to convince Carney to get back into her vehicle, she was unsuccessful and later left Carney to walk the rest of the way home. However, shortly after leaving Carney on the roadside, Patterson returned and found his lifeless body slumped over on the shoulder of the road. Emergency medical technicians, Department of Public Safety (DPS) officers, Longview police officers, and Harrison County sheriff deputies arrived on the scene in response to an emergency call placed by a passerby. DPS officer Odie Hitt advised the various law enforcement personnel at the scene to be on the lookout for a pickup truck that was leaking antifreeze, because there was evidence at the scene of radiator coolant having leaked out onto the roadway, indicating the probability that a vehicle's radiator had suddenly ruptured near the point where the coolant was first visible. Shortly after Carney was transported to Good Shepherd Hospital, he was pronounced dead.[2] While searching for a suspect, Harrison County deputies found a gray 1992 Chevrolet pickup truck at the home of Hooks' mother. The truck had extensive frontal damage and a radiator leak. The deputies inquired of Hooks' mother as to the whereabouts of her son, and after indicating that she had taken him to his apartment, she accompanied them there. After announcing their presence and getting no response, the deputies entered Hooks' apartment and found him asleep in the living

---

1. Punishment was enhanced by a prior conviction for burglary of a building in 1983. Additionally, during the punishment phase, Michael Burrows, a probation officer in Marion County, testified that Hooks had been placed on probation after being convicted for driving while intoxicated in August 1998. The record also reflects that Hooks had previously been convicted in 1992 and in 1996 for driving while intoxicated.

2. Dr. Robert Palmer, a board-certified pathologist, conducted an autopsy on Carney and determined that based on Carney's severed spinal column, he most likely died at the scene of the accident.

room.[3] The officers had difficulty rousing Hooks, but ultimately succeeded and took him into custody. While in custody he consented to the taking of a blood specimen for a determination of his blood alcohol content.[4] Later, in a voluntary statement given to Westy Meisenheimer, an investigator for the Harrison County district attorney's office, Hooks admitted that he and his common-law wife had been driving around and drinking beer since about 4:00 p.m. that day.[5]

■ On appeal Hooks attacks both the legal and factual sufficiency of the evidence to support the conviction. Legal and factual challenges to the sufficiency of the evidence require the use of separate and distinct standards. *Johnson v. State,* 23 S.W.3d 1, 7 (Tex.Crim.App.2000). A legal sufficiency review calls on this Court to view the relevant evidence in the light most favorable to the verdict. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Johnson v. State,* 23 S.W.3d at 7; *Hines v. State,* 978 S.W.2d 169, 172 (Tex.App.—Texarkana 1998, no pet.). In contrast, a factual sufficiency review requires that the evidence be viewed in a neutral light that favors neither party. *Johnson v. State,* 23 S.W.3d at 7.

■ When a challenge to both legal and factual sufficiency is presented, an appellate court must first determine whether the evidence is legally sufficient to support the verdict. *Clewis v. State,* 922 S.W.2d 126, 135 (Tex.Crim.App.1996); *Hines v. State,* 978 S.W.2d at 172. If the court finds the evidence legally insuffi-

cient, the case must be reversed and a judgment of acquittal rendered. *Gaffney v. State,* 937 S.W.2d 540, 541 (Tex.App.—Texarkana 1996, pet. ref'd). If the court finds the evidence factually insufficient, the conviction must be reversed and the cause remanded for a new trial. *Id.* The standard for reviewing the sufficiency of the evidence is the same for cases involving direct or circumstantial evidence. *Jackson v. State,* 672 S.W.2d 801, 803 (Tex. Crim.App.1984).

■ A legal sufficiency review requires us to view the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. at 319, 99 S.Ct. 2781; *Johnson v. State,* 23 S.W.3d at 7; *Hines v. State,* 978 S.W.2d at 172. An inquiry into legal sufficiency does not require us to ascertain whether we believe the evidence at trial established guilt beyond a reasonable doubt. *Gaffney v. State,* 937 S.W.2d at 541. If there is any evidence that could establish guilt beyond a reasonable doubt, the conviction will not be reversed for legal insufficiency. *Hines v. State,* 978 S.W.2d at 172. This Court positions itself as a final due process safeguard to ensure the rationality of the fact finder. *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988); *Hines v. State,* 978 S.W.2d at 172.

■ We find the evidence legally sufficient to support the jury's verdict. As to the issue of guilt, Hooks' only contention is that there is legally insufficient evidence to

3. The officers used a key they found on the floorboard of the truck parked in front of Mrs. Hooks' home.

4. The DPS crime laboratory in Tyler certified that Hooks' blood sample contained .29 grams of alcohol per 100ml of blood.

5. Hooks further admitted that while driving around, the couple stopped to purchase a six-pack of sixteen-ounce beer, as well as an additional twelve-pack.

show that he struck Carney while Carney was off the roadway. That fact is important because it would be probative of a causal connection between Hooks' intoxication and his striking Carney, since it would indicate that Hooks' intoxication caused him to run off the roadway. We find sufficient circumstantial evidence to support a conclusion that Hooks struck Carney while Carney was off the roadway. Patterson saw Carney walking on the grassy edge of the highway shoulder. In fact she testified that she pulled off the roadway onto the shoulder when she tried to convince Carney to get back into her vehicle. Additionally, Officer Hitt, an experienced DPS officer, testified that at the accident scene he observed yaw[6] marks suggesting that a vehicle had made a sharp, evasive movement from the shoulder back onto the roadway. Officer Hitt also testified that he observed a trail of antifreeze from the shoulder back onto the roadway. The State subsequently called DPS Sergeant Donnie Willingham, supervisor of the Tyler district accident reconstruction team. As an expert in accident reconstruction, Willingham opined that because of the position of Carney's shoes, which were knocked off of Carney at the impact, Carney was most likely struck while he was off the road.[7] Willingham prepared a scale diagram representing the accident scene, and he testified that it indicated from the location of yaw marks, coolant leakage, and debris from the impact that Carney was off the road when he was hit. On a legal sufficiency challenge, we do not assess the evidence as a whole,

but only examine the evidence most favorable to the verdict. Viewed from that perspective, the evidence is legally sufficient to support the verdict.

 The courts of appeals are constitutionally empowered to review the judgment of the trial court to determine the factual sufficiency of the evidence used to establish the elements of an offense. *Johnson v. State*, 23 S.W.3d at 6. In determining factual sufficiency, we view all the evidence in a neutral light and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* at 7 (quoting *Clewis v. State*, 922 S.W.2d at 129); *Hines v. State*, 978 S.W.2d at 172. We review the evidence weighed by the jury that tends to prove the facts in dispute and compare it with the evidence that tends to disprove those facts. In conducting a factual sufficiency review, we have the authority to disagree with the fact finder's determination. Our review must be appropriately deferential to avoid substituting our judgment for that of the fact finder. *Hines v. State*, 978 S.W.2d at 172. Our evaluation should not intrude on the fact finder's role as the sole judge of the weight and credibility given to witness testimony.

 The appropriate scope of a criminal factual sufficiency review encompasses both formulations used in civil jurisprudence. *Johnson v. State*, 23 S.W.3d at 11. The evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust, or if the finding is

---

**6.** The officer defined these yaw marks as striations or tread marks left by a vehicle's tires that leave a curved marking as opposed to skid marks which tend to be more straight.

**7.** Sergeant Willingham indicated that the impact was somewhere west of where the shoes were found because shoes tend to travel a slight distance straight from where the acci-

dent occurred. Apparently, the shoes became detached from Carney's body at the moment of impact and settled on the shoulder of the road, but the body was carried some distance by the truck until Hooks turned back onto the road, causing the body to roll off farther up the shoulder of the road.

against the great weight and preponderance of the evidence. The complete and correct standard this Court must follow in conducting a factual sufficiency review of the elements of a criminal offense asks whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.

■ We cannot say that a neutral review of the evidence shows that it is so weak as to undermine confidence in the jury's determination, and we find no contrary proof that greatly outweighs the evidence supporting the jury verdict. Hooks' sufficiency challenge relies extensively on his own account that he provided to police the evening of the accident, giving his view of what transpired, as well as an attack on the relevance and reliability of Officer Hitt's testimony.

Hooks contends that his handwritten and videotaped statements constitute exculpatory evidence the State failed to rebut. In both of his statements, Hooks told the interrogating officer that "someone appeared in front of my truck and threw up their hands" and that he had "little or no time to stop."

As discussed earlier, however, there is substantial circumstantial evidence indicating that Hooks' truck did veer off of the roadway and strike Carney. Moreover, Dr. Robert Palmer, a physician and board-certified pathologist, opined that Carney was struck from behind. Dr. Palmer testified that upon examination, Carney exhibited a severe deformity in the thoracic portion of his spine.[8] Further, Dr. Palmer testified that the nature of the deformity suggested "that a blunt force trauma of a very good nature hit that part of the thoracic spine to push it [forward] and actually fracture it." Additionally, Dr. Palmer opined that the compound fracture in Carney's left lower leg, as well as the multiple posterior rib fractures he suffered, indicated that Hooks' truck struck Carney in the back. Although Carney also sustained extensive injuries to the right side of his head and neck, as well as lacerations on his forehead, according to Dr. Palmer these injuries were probably sustained when Carney's head contacted the hood and windshield of the truck[9] after the initial impact. Dr. Palmer steadfastly denied that Carney's injuries indicated that he was struck on the right side or on the front.

The defense did, however, elicit on cross-examination of Officer Willingham testimony that whether a driver was sober or drunk, it would be physically impossible for that driver to react in time to avoid hitting someone who suddenly appeared in front of the driver's vehicle.[10] The defense also elicited testimony from Natasha Grizzaffi, a chemist at the DPS Garland crime laboratory, that Carney's blue jeans exhibited a black V-shaped marking, corresponding to the license plate holder on Hooks' truck, about one inch from the right side seam toward the back of the

---

8. According to Dr. Palmer, the spine is divided into three regions: the cervical, thoracic (where the ribs come around and attach), and the lumbar (lower back). Dr. Palmer found that Carney's spinal column was pressed to the front of his body.

9. The windshield of the truck was extensively damaged in two areas, and hair samples were found at the base of the windshield as well as on the wipers.

10. Willingham testified that assuming Hooks was traveling seventy miles per hour, it would take him 153 feet to perceive a danger and react. He further indicated that a person could not even hit the brakes during that time.

jeans. However, Grizzaffi found other black marks on the backs of the legs of the jeans indicating that Carney had been struck from behind. Furthermore, testimony showed that Carney had a blood alcohol level of .089 percent, but Dr. Palmer explained that this level would not impair a person's faculties as compared to a blood alcohol level of nearly .3 percent, as Hooks had.

Additionally, as alluded to by the State, Carney's exact location in relation to U.S. Highway 80 cannot be determined from reviewing Hooks' two statements. The jury, as fact finder, weighed these statements against the evidence gathered at the scene, as well as the accident reconstruction undertaken by various law enforcement personnel and the medical opinions regarding Carney's injuries formulated by Dr. Palmer, in making its decision.

▮ We disagree with Hooks' contention that the evidence is factually insufficient. As noted earlier, the main issue challenged by Hooks on appeal is whether the State proved beyond a reasonable doubt that he struck Carney while he was off the roadway. Hooks has not provided conclusive or overwhelming evidence that would discredit the jury's finding. The jury is the sole judge of the weight and credibility of the evidence and testimony produced at trial. As such, it can choose, as it did, to find the combined testimony of the State's witnesses more compelling than the two statements provided by Hooks. In conducting a factual sufficiency review, we must examine the complete record. In our neutral consideration of the entire record, we cannot find that the jury's finding is against the overwhelming weight of the evidence.

▮ Hooks also contends that the trial court erred by denying his motion for a continuance because of the widespread publicity regarding a similar intoxication manslaughter case and the potential for inflammatory attitudes in the community from which the jury pool was selected. A few weeks before Hooks' trial, the *Marshall News Messenger* published multiple front-page stories about an accident that occurred on New Year's Eve in which Vicki Kuhn, an intoxicated driver, crossed the center stripe of U.S. Highway 80 and struck an oncoming car, killing two young boys and severely injuring their mother and two other boys. In his motion for continuance, Hooks argued that the publicity created by the local media coverage for that case would prejudice him by inflaming the community's attitudes toward intoxication manslaughter cases generally, thus effectively denying him a fair trial.

In *Lopez v. State,* the Court of Criminal Appeals considered a similar case involving the shooting death of a school principal and the publicity created by the shooting of a junior high school teacher by a student. *Lopez v. State,* 628 S.W.2d 77, 80–81 (Tex.Crim.App. [Panel Op.] 1982). The appellant in *Lopez* filed a motion for continuance, arguing that the adverse publicity generated by the school shooting would taint the jury panel. The motion was filed before jury selection and was accompanied only by newspaper clippings. The Court of Criminal Appeals held that where the appellant's name did not appear in the newspaper articles accompanying the motion, and absent a showing that any prospective jurors read and were prejudiced by the article, the trial court did not abuse its discretion in denying the motion for continuance.

Similarly, in *Hullaby v. State,* the Fort Worth Court of Appeals faced a similar issue regarding an alleged gang-motivated shooting and the publicity generated by a similar gang-related shooting days before trial. *Hullaby v. State,* 911 S.W.2d 921 (Tex.App.—Fort Worth 1995, pet. ref'd).

Just as in the *Lopez* case, the appellant produced no evidence other than newspaper clippings in support of his motion for continuance. Additionally, the newspaper article did not discuss the appellant or his case in any way. The court held that the trial court did not abuse its discretion by denying the motion for continuance.

Our facts are very similar. Hooks' motion for continuance, while accompanied by various newspaper clippings, included nothing to demonstrate that potential jurors had been prejudiced by the publicity concerning the other incident. Additionally, the record of the jury panel voir dire indicates that none of the jurors was questioned about the similarities between Hooks' case and the Kuhn case, much less any prejudicial effect created by the media coverage.

The granting of a motion for continuance is within the sole discretion of the trial court. *See* Tex. Code Crim. Proc. Ann. art. 29.03 (Vernon 1989) (criminal action may be continued upon sufficient cause shown in motion); *Cooks v. State*, 844 S.W.2d 697, 725 (Tex.Crim.App.1992); *see also McGinnis v. State*, 664 S.W.2d 769, 771–72 (Tex.App.—Amarillo1983, no pet.). We find that the trial court did not abuse its discretion in denying Hooks' motion for continuance.

█ Finally, we turn to Hooks' fourth and final point of error. He contends that Officer Hitt's opinion was unreliable because of his lack of expert qualifications, and that the admission of two out of three autopsy photographs constituted harmful error. We disagree.

█ The admission of expert testimony is within the sound discretion of the trial court, and its decision will not be disturbed absent a clear abuse of that discretion. *Wyatt v. State*, 23 S.W.3d 18 (Tex.Crim.App.2000); *Hardin v. State*, 20 S.W.3d 84 (Tex.App.—Texarkana 2000, pet. ref'd). A general objection to the qualifications of a tendered expert witness is not sufficient to preserve error on appeal. *Chisum v. State*, 988 S.W.2d 244 (Tex.App.—Texarkana 1998, pet. ref'd).

Hooks' defense attorney objected to Officer Hitt's opinion as to what transpired on the night of the accident, based on a lack of qualifications. However, such a general objection does not preserve error for appellate review, and without a showing of an abuse of discretion by the trial court in admitting such testimony, we find no error.

█ Hooks also contends that the admission of two out of three autopsy photographs was prejudicial and only served to inflame the minds of the jurors. Once a defendant objects to the admission of photographic evidence on the basis of unfair prejudice, the balancing test of Tex.R.Evid. 403 is triggered. The test requires that a trial court balance the probative value of the photographs against their potential for unfair prejudice. If the probative value is substantially outweighed by the danger of unfair prejudice, the court is required to exclude such evidence. The court must consider a host of factors affecting probativeness, including the relative weight of the evidence and the degree to which its proponent might be disadvantaged without it, and balance those factors against the tendency that the photographs have to encourage resolution of material issues on an inappropriate emotional basis. *See Ladd v. State*, 3 S.W.3d 547, 568 (Tex.Crim.App. 1999) (citing *Narvaiz v. State*, 840 S.W.2d 415, 429 (Tex.Crim.App.1992)).

In this case the trial court, after viewing the three autopsy photographs, admitted two into evidence and excluded one. The two that were admitted tended to substantiate the opinion of Dr. Palmer that Carney was struck from behind while he was

off of the roadway. Because we agree with the State that the probative value of the two admitted photographs is not substantially outweighed by the danger of unfair prejudice, we find that no error was occasioned by the trial court's admission of the two autopsy photographs.

For the reasons stated, we affirm the decision of the trial court.