John Michael RIVERA, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–00–00207–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Aug. 28, 2001.

Decided Aug. 29, 2001.

Tony Aninao, Houston, for appellant.

Calvin A. Hartmann, Harris County District Attorney's Office, Dan McCrory, As-

sistant District Attorney, Houston, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

CORNELIUS, Chief Justice.

John Michael Rivera was convicted of possession of more than four but less than 200 grams of heroin. Rivera was convicted by a jury, which found two enhancement paragraphs true. The court sentenced Rivera to fifty years' confinement.

On appeal, Rivera raises five points of error: In points one and two, he attacks the legal and factual sufficiency of the evidence to support the jury finding that he possessed heroin found in an apartment. In points three and four, he attacks the legal and factual sufficiency of the evidence to support his conviction for possessing heroin found in his vehicle. In point five, he contends the trial court erred in overruling his motion to suppress evidence found in an apartment pursuant to his written consent to search the apartment.

We first address Rivera's contention that the trial court erred in overruling his motion to suppress the evidence found in the search of apartment number 5 at 1905 Sumpter in Houston. Rivera alleged in his motion to suppress that his written consent to search that apartment was not voluntary. The trial court overruled the motion to suppress, finding that Rivera's consent to search the apartment in question was freely and voluntarily given.

■ We review the trial court's ruling on a motion to suppress by an abuse of discretion standard. *Oles v. State,* 993 S.W.2d 103, 106 (Tex.Crim.App.1999). In a suppression hearing, the trial court is the sole trier of fact and judge of the credibili-ty of the witnesses and the weight to be given their testimony. We view the evidence in the light most favorable to the trial court's ruling, *State v. Ballard,* 987 S.W.2d 889, 891 (Tex.Crim.App.1999), and afford almost total deference to the trial court's determination of historical facts that the record supports, especially when the fact findings are based on an evaluation of the witnesses' credibility and demeanor. *State v. Ross,* 32 S.W.3d 853, 855 (Tex.Crim.App.2000); *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997).

■ Evidence produced at the suppression hearing showed that on December 3, 1999, Houston Police Department Officer Steven Kwiatkowski and other officers were in the process of executing a search warrant on Rivera's vehicle, a white 1987 Oldsmobile. The police officers had gathered on the parking lot in the 1900 block of Sumpter in Houston. They were awaiting Rivera's return to the apartment. At about 11:45 p.m., Rivera drove up in his vehicle and was immediately confronted by Kwiatkowski and the other officers. They told him their purpose for being there and immediately began a search of the vehicle. Kwiatkowski found a matchbox on the driver's side of the vehicle containing part of a glass cocaine pipe, and also found a small baggie containing heroin residue located under the driver's seat.

After recovering these items, Kwiatkowski asked for Rivera's consent to search apartment number 5 at 1905 Sumpter. He testified he read the consent form to Rivera, told Rivera to read it, and told him that if he wanted to sign it, to do so. Kwiatkowski testified that it took about fifteen minutes from the time the officers first confronted Rivera until he signed the consent form. He testified he saw Rivera sign the form, which was witnessed by two other officers, Fuller and Lerma. He tes-

tified that Rivera was not threatened or coerced into signing the consent form.

Kwiatkowski obtained the warrant only the day before. He got the address from an informant. He watched Rivera leave the 1905 Sumpter apartment one time on that date, when Rivera went to a nearby restaurant. He did not see Rivera at that location at any other time. His testimony was that Rivera did not look like he was doing anything, and he gave the impression he was living there. The officers never tried to definitely discover who was the lessee of apartment number 5.

After he signed the consent form, Rivera gave officers the key to the apartment. The key was in Rivera's vehicle's ignition, and was attached to his key chain. Apartment number 5 was a two-bedroom unit. The officers first searched the living room and kitchen. They observed very little furniture or other indications of occupancy in the rooms. In one of the bedrooms, the officers searched under the bed and found an eyeglass case containing 7.7 grams of black tar heroin, along with two syringes and a can bottom used to cook heroin. Kwiatkowski testified that Rivera told him he had some "cut,"—i.e., lactose used to grind up with the heroin to make the heroin go further, which the officers did recover under the bed. Also found under the bed were a Westinghouse coffee grinder with a clear plastic baggie inside the top containing eighteen grams of heroin, and a plate and spoons containing heroin residue. Kwiatkowski said that Rivera never tried to take back his consent or prevent the officers from searching under the bed. Kwiatkowski saw some men's clothing in the other bedroom, but neither that clothing nor the key to the apartment was tagged and kept as evidence.

Fuller and Lerma were present and assisted in executing the vehicular search warrant, and witnessed Rivera's signing of the consent to search the apartment. Both testified they saw Rivera sign the consent form, and both testified that Rivera signed the form voluntarily, with no force or coercion.

Rivera testified that a period of some three and one-half hours elapsed between the time of his first encounter with the officers and their first request that he sign the consent to search. He testified that he did not voluntarily sign the form. Although the officers testified to the contrary, Rivera says that they strip-searched him. Rivera claimed that he told Kwiatkowski that he could not sign the consent form because he did not live there. Rivera stated that Fuller threatened to get a search warrant if the consent was not signed, and he testified that Fuller struck and kicked him, causing him injuries.

■■■ In reviewing the record, we find no abuse of discretion by the trial court in finding the officers' testimonies credible and that of Rivera not credible. As previously noted, we are required to give almost total deference to the trial court's determination of credibility if it is supported by the record, as it is in this case. The record supports the trial court's determination that the consent was voluntary. Both the United States and Texas Constitutions protect only against unreasonable searches and seizures. Searches conducted pursuant to voluntary consents are not unreasonable. *Reasor v. State*, 12 S.W.3d 813, 817–18 (Tex.Crim.App.2000).

■■■ Even assuming the trial court correctly determined the historical facts, we are still required to determine the legal question of whether Rivera could give effective consent to search the apartment in question. The State admits that the police did not check to determine the lessee of that apartment, but did see Rivera coming and going from the apartment. Rivera

was also able to immediately produce the key to the apartment that was in his vehicle's ignition and attached to his key ring.

■ There are two ways to resolve this issue. One, because the trial court is the sole judge of the credibility of the witnesses at such a hearing, and may believe or disbelieve any evidence, we may assume that the trial court did not believe Rivera when he asserted that he was not the lessee of the apartment. Second, even assuming that some unknown third party was the actual lessee, we find that the evidence demonstrates that Rivera could properly give consent to the search. Consent to search may be given by one not the owner of the object to be searched if that person has common authority over, or a sufficient relationship to, the premises or effects to be searched. *United States v. Jenkins,* 46 F.3d 447, 454–55 (5th Cir. 1995), *quoting United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242, 249 (1974). That the party purporting to give the consent possesses the keys has been held to demonstrate such a relationship. *See, e.g., Cunningham v. State,* 848 S.W.2d 898, 905 (Tex. App.—Corpus Christi 1993, pet. ref'd); *Gurleski v. United States,* 405 F.2d 253, 262 (5th Cir.1968). We hold that Rivera's possession of the keys to the apartment, along with his observed activity in connection with the apartment, demonstrated sufficient authority over the apartment that he could effectively consent to its search.

The remaining points challenge the legal and factual sufficiency of the evidence to support a finding that Rivera possessed the heroin. Points one and two challenge the legal and factual sufficiency of the evidence supporting his conviction for possession of heroin found in apartment number 5. Points three and four make the same challenges regarding the heroin found in Rivera's vehicle.

■ When both legal and factual sufficiency are challenged, we first determine whether the evidence is legally sufficient to support the verdict. If we find the evidence legally insufficient, we reverse the conviction and order an acquittal. If we find the evidence factually insufficient, we reverse the conviction and remand the cause for a new trial. *Hooks v. State,* 44 S.W.3d 607, 611 (Tex.App.—Texarkana 2001, no pet.).

■ A legal sufficiency review requires us to view the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Johnson v. State,* 23 S.W.3d 1, 7 (Tex.Crim.App.2000); *Hooks v. State,* 44 S.W.3d at 611. If there is any evidence that would establish guilt beyond a reasonable doubt, the conviction will not be reversed for legal insufficiency. The court positions itself as a final due process safeguard to ensure the rationality of the fact finder. *Hooks v. State,* 44 S.W.3d at 611.

■ In contrast, a factual sufficiency review requires us to view the evidence in a neutral light, favoring neither party. We set aside the verdict only if it so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Johnson v. State,* 23 S.W.3d at 7; *Clewis v. State,* 922 S.W.2d 126, 129 (Tex. Crim.App.1996); *Hooks v. State,* 44 S.W.3d at 612. As we stated in *Hooks,* our review must be appropriately deferential to avoid substituting our judgment for that of the fact finder, and our evaluation should not intrude on the fact finder's role as the judge of the weight and credibility given to witness testimony. *Hooks v. State,* 44 S.W.3d at 612.

In order to convict Rivera, the State was required to prove that he exercised actual care, custody and control over the substance; that he was conscious of his connection with it; and that he possessed the substance knowingly or intentionally. The evidence used to satisfy these elements may be direct or circumstantial; whether direct or circumstantial, the State must establish that Rivera's connection with the illegal substance was more than just fortuitous. When the contraband is not found on the person of the defendant, or is not in his exclusive possession, additional facts must affirmatively link him with the contraband. Such links need not be so strong as to exclude every other reasonable hypothesis except Rivera's guilt. The affirmative links ordinarily emerge from an orchestration of several factors and the logical force they have in combination. Factors to be considered when evaluating affirmative links include: 1) Rivera's presence when the search was executed; 2) whether the contraband was in plain view; 3) Rivera's proximity to and the accessibility of the contraband; 4) whether Rivera was under the influence of a controlled substance when arrested; 5) whether Rivera possessed other contraband when arrested; 6) whether Rivera made incriminating statements when arrested; 7) whether Rivera tried to flee; 8) whether Rivera made furtive gestures; 9) whether there was an odor of the contraband; 10) whether other contraband and drug paraphernalia were present; 11) whether Rivera owned or had the right to possess the place where the drugs were found; and 12) whether the place where the drugs were found was enclosed.

Viewing the evidence in a light most favorable to the State, the testimony showed that officers Kwiatkowski and Antonio Garcia had, on the day before their confrontation with Rivera, seen Rivera at the apartment in question; they saw Rivera leave the apartment, go to a nearby fast-food restaurant, and return to the apartment. Rivera had in his possession the key to the apartment, it was on the same key ring as the key to his automobile, and he gave the key over to the officers and accompanied them to the apartment. Clothing and "paperwork" identifying Rivera were found in one of the bedrooms of the apartment. The other bedroom did not have anything in it showing that Rivera lived there. Both officers testified that during the search of the bedroom, they saw Rivera focusing his eyes on certain areas and that he appeared to be nervous. Kwiatkowski found an eyeglass case which appeared to him, an experienced narcotics officer, to contain heroin. Also under the bed was a coffee grinder with a plastic baggie containing a substance that appeared to be heroin, some lactose that was used to cut the controlled substance, and the cut-off bottom portion of an aluminum can, used to cook the substance. Chemical tests introduced through the State's expert witness confirmed that the substance found in the apartment was heroin, totaling approximately twenty-seven grams, including adulterants and dilutants. Further, Rivera voluntarily consented to the search of the apartment. We find this evidence sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Rivera possessed the heroin. Among the items established are his proximity to the place where the contraband was located, that he had the right of access to and possession of the place where the heroin was located, the place where the drugs were found was enclosed, and his furtive gestures. *See, Jones v. State*, 944 S.W.2d 642 (Tex.Crim.App.1996) cert den., 522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997).

In considering factual sufficiency, neither the key to the apartment nor Rivera's clothing was confiscated by the police and kept for evidence. The police made no effort to determine the actual lessee of the apartment or investigate who else may have had access to the apartment. The manager of the apartments testified that another person had rented the apartment and that the lessee had no roommate. The address on the paperwork with Rivera's name on it showed an address different from the apartment. Nevertheless, examining all the evidence in a neutral light and giving due deference to the jury's function as the trier of fact, we hold that the jury's finding of possession is not so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust.

In issues three and four, Rivera contends the evidence is not legally or factually sufficient to support a conviction for possession of the heroin found in a baggie under the front seat of Rivera's vehicle. In view of our disposition of points one and two,[1] it is not necessary to rule on these points. However, the evidence shows that Kwiatkowski, while searching Rivera's vehicle, found a plastic baggie under the seat on the driver's side, which the State's expert testified was heroin. The vehicle was registered to Rivera, and he had been seen driving the vehicle. These are sufficient affirmative links to establish Rivera's possession of this quantity of heroin. A rational trier of fact could have found that Rivera was guilty of possession of the heroin found in his vehicle. Further, assuming the jury also found that Rivera was in possession of the heroin found in the vehicle, we conclude that its determination was not so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust.

We find no reversible error. The judgment of the trial court is affirmed.

---

1. As was stated earlier in the opinion, the total amount of heroin found in apartment was approximately twenty-seven grams, sufficient to convict Rivera of the greater offense, without consideration of the amount seized from his vehicle.