In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00009-CV
______________________________


 
 
IN THE MATTER OF C.M.G.
 
 


                                              

On Appeal from the 317th Judicial District Court
Jefferson County, Texas
Trial Court No. C-9648-J


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          C.M.G. appeals from a jury finding that she engaged in delinquent conduct:
committing capital murder. Specifically, the jury found that C.M.G. intentionally or
knowingly caused the death of a child, younger than six years of age, by suffocation. 
Based on the jury's finding, the court committed C.M.G. to the Texas Youth Commission
for a term of twelve years, "until said child is seventeen years of age and with the possibility
of transfer [to the state penitentiary]." C.M.G. contends in this appeal the evidence is
legally and factually insufficient to support the verdict. 
          The evidence shows that C.M.G., at age fifteen, gave birth to a male child fathered
by her brother. She was at home, alone in her room, when she delivered the child. She
wrapped the newborn in a wet towel and zipped it up inside a band bag.


 The deceased
infant was found inside the bag, and the autopsy report shows that it died of asphyxia, due
to smothering. The evidence further shows that C.M.G. has a mental age well below
normal and that her intellectual ability is near mental retardation. 
          Even though appeals of juvenile court orders are generally treated as civil cases,
adjudications of delinquency in juvenile cases are statutorily based on the criminal
standard of proof. See Tex. Fam. Code Ann. § 54.03(f) (Vernon Supp. 2005). Thus, we
review an adjudication by applying the same standards applicable to sufficiency of the
evidence challenges in criminal cases. In re K.H., No. 06-04-00103-CV, 2005 WL 1719329
(Tex. App.—Texarkana July 26, 2005, no pet.); In re J.B.M., 157 S.W.3d 823 (Tex.
App.—Fort Worth 2005, no pet.).
          When both legal and factual sufficiency are challenged, we first determine whether
the evidence is legally sufficient to support the verdict. Rivera v. State, 59 S.W.3d 268,
273 (Tex. App.—Texarkana 2001, pet. ref'd). In reviewing the legal sufficiency of the
evidence, we view the relevant evidence in the light most favorable to the verdict and
determine whether any rational trier of fact could have found the essential elements of the
crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App.
2000).
          In reviewing the factual sufficiency of the evidence, we view the evidence in a
neutral light, favoring neither party. Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App.
2004); Johnson, 23 S.W.3d at 7; see Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim.
App. 1996). We view all the evidence and set aside the verdict only if it is so contrary to
the overwhelming weight of the evidence as to be clearly wrong and unjust. Johnson, 23
S.W.3d at 9; Clewis, 922 S.W.2d at 129; In re C.S., 79 S.W.3d 619, 622 (Tex.
App.—Texarkana 2002, no pet.). 
          C.M.G. attacks the sufficiency of the evidence by contending it fails to show: (1) that
C.M.G. intended to kill, (2) that she knew her conduct was reasonably certain to cause the
child's death, (3) that she was aware of but disregarded a substantial and unjustifiable risk
that death would result from her conduct, or (4) that she should have been aware of such
a risk.
          In reviewing the sufficiency of the evidence, we are to look at events occurring
before, during, and after the commission of the offense, and we may rely on actions of the
defendant that show an understanding and common design to do the prohibited act. 
Guevara v. State, 152 S.W.3d 45, 49–50 (Tex. Crim. App. 2004). Each fact need not point
directly and independently to the guilt of the appellant, as long as the cumulative effect of
all the incriminating facts are sufficient to support the conviction. Motive is a significant
circumstance indicating guilt, and intent may also be inferred from circumstantial evidence
such as acts, words, and the conduct of the appellant. Id. at 50.
          There is no doubt C.M.G. wrapped the baby in a wet towel and placed it in the bag. 
However, there is no direct evidence of intent. The mental culpability of a defendant is of
such a nature that it generally must be inferred from the circumstances in which a
prohibited act or omission occurs. A mental state is concealed within the mind of an
individual and can only be determined from the words, acts, and conduct of that individual. 
Moore v. State, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998). Because there is no direct
evidence C.M.G. intended to kill the baby, the question is whether the jury had sufficient
evidence before it from which it could infer C.M.G. knowingly caused the baby's death.


 
An act is "knowing" when the person knows his or her conduct is reasonably certain to
cause the result. Tex. Pen. Code Ann. § 6.03(b) (Vernon 2003).  
          As the trier of fact, the jury is the sole judge of the credibility of the witnesses and
the weight to be given their testimony. Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon
1979). The jury could accept portions of a witness' testimony and reject other portions. 
Bowden v. State, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982). Direct evidence of
culpability is not necessary to support a conviction; intent or knowledge may be inferred
from the acts and circumstances surrounding a crime. Hernandez v. State, 819 S.W.2d
806, 809–10 (Tex. Crim. App. 1991). 
          The evidence for and against the verdict in this case can be summarized as follows: 
Evidence Supporting the Verdict 
C.M.G. went to the hospital after having
the baby because she was bleeding;
there she admitted having the child,
cutting the umbilical cord, cleaning the
baby with towels, and placing the baby in
her band bag. She also admitted
washing the towels and bed linens. She
left the baby at home, zipped up in the
band bag.

C.M.G. successfully hid her pregnancy
from family and friends. She took steps
to hide the evidence she had given birth,
including hiding the baby, throwing the
placenta over a fence, washing the
bloody items, and leaving the house. 


Dr. Tommy Brown, the pathologist who
examined the baby, testified he saw none
of the typical signs of a stillbirth. His
review indicated that the baby's heart was
beating as it went through the birth canal
and that it had breathed in oxygen. He
testified the baby could have died from
being wrapped in a wet towel that
occluded the airway. He testified that, if
the baby was placed in a band bag that
was then sealed off, the baby would
quickly use up the oxygen. He said the
baby and wet towel took up about two
thirds of the space in the bag. He also
testified he saw nothing else in the course
of his examination that could have
resulted in the baby's death, other than
asphyxiation. 

C.M.G. told a friend the baby "was
breathing and it stopped." 

Evidence against the Verdict

C.M.G. claimed at the hospital that the
child did not move or breathe. 

The baby was bundled up in a towel
inside the zipped band bag. The officer
who located the baby saw only a foot
sticking out from the towel. There were
no signs of injury.

The pathologist testified there was no
indication of strangulation or manual
asphyxiation. He also acknowledged that
some babies die for no ascertainable
reason.

C.M.G.'s mother testified C.M.G. did
poorly in school and was held back in the
fifth grade. She described her daughter
as "slow." The mother further testified
C.M.G. is easily confused. 

Dr. Gerald Harris, a clinical psychologist,
testified C.M.G. has long-term
depression, Attention Deficit Disorder,
and Post-traumatic Stress Disorder
(PSD). PSD and depression make a
person very indecisive. C.M.G. is very
immature and has an IQ of between 77
and 87; mental retardation cutoff is 75. 
She is below normal intelligence, at the
edge of the range of mental retardation. 
Various scales show her
mental/emotional level to be between
eight and eleven years of age. 


Harris further testified C.M.G. expressed
considerable remorse and concern over
her behavior. 

Harris read to the jury a poem written by
C.M.G. He said the poem is suicidal in
nature and quite introspective.

Harris further testified C.M.G. told him
she was guilt-ridden for not getting help
before the baby was born. 
The evidence shows that the child was born alive and that C.M.G. put the child in
the bag. The sole question in this appeal is whether C.M.G. acted with knowledge her
conduct would result in the death of the infant. 
          Texas does not recognize diminished capacity as an affirmative defense, i.e., a
lesser form of the defense of insanity. Jackson v. State, 160 S.W.3d 568, 574–75 (Tex.
Crim. App. 2005). In contrast, as in Jackson, the diminished-capacity doctrine at issue in
this case is simply a failure-of-proof defense in which the defendant claims the State failed
to prove C.M.G. had the required state of mind at the time of the offense, based in part on
her inherent mental and emotional capabilities, as shown by the evidence, including expert
testimony. 
          Even though C.M.G. is not of average intelligence and is emotionally dysfunctional,
the evidence showed she was functional at a middle-school level. Her act of placing the
baby in a zipped band bag is consistent with her previous acts of hiding her pregnancy and
can easily be described as the culmination of those actions. It is not an unreasonable
inference from her actions that she wanted to permanently hide that fact by eliminating the
child—and that she would know that placing the baby, wrapped in a wet towel, in a small,
zipped bag, would result in its suffocation. 
          We find the evidence is not so weak that the jury's verdict was clearly wrong and
unjust; nor is the verdict so against the overwhelming weight of the evidence as to be
clearly wrong and unjust. Accordingly, the evidence is legally and factually sufficient. 
          We affirm the judgment.


                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      November 22, 2005
Date Decided:         November 30, 2005