

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-236-CR
### 2-07-237-CR
### 2-07-238-CR

JESSE GENE ODOM                                          APPELLANT

V.

THE STATE OF TEXAS                                          STATE

------------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I.  Introduction

In two issues, Appellant Jesse Gene Odom ("Odom") asserts that the trial court erred in overruling Odom's motion for instructed verdict because he

------------

[1] *See* TEX. R. APP. P. 47.4.

asserts the evidence was legally and factually insufficient to support the verdict.

## II.  History

### A.  Factual Background

On July 12, 2006, Mansfield Police Department set up surveillance at a home located at 2518 Edgefield Trail in Mansfield, Texas, in response to an anonymous complaint about narcotic sales.  The officers observed a 1999 Mercury Mountaineer SUV ("SUV") backed up to the garage.  The garage door was partially open and police observed Odom making approximately ten trips to and from the SUV to the garage loading things, including a black bag, into the back of the SUV.

After the officers saw Odom put the black bag in the SUV, they walked up to Odom, identified themselves, and asked to search the house.  With Odom's consent, the police searched the house.  During the search, the officers determined that Odom had outstanding traffic warrants and arrested him.  During a search of his person, the officers found less than a gram of methamphetamine and a glass pipe.

Odom contends that after he was arrested and searched, he retracted his consent to search the house, and that, because the officers did not find anything in the house, they focused on the SUV.  The State asserts that Odom

2

told the officers some contradictory things about the SUV, but that he eventually stated that he owned the SUV and his friend had just signed the SUV's title over to him. The police then called for a K-9 drug dog that proceeded to sniff the SUV and made a positive alert for contraband.

Subsequently, the officers obtained a search warrant for the SUV and proceeded to search the SUV. No contraband was found in the black zipper bag or in any other items that they saw Odom carrying to the SUV. However, the officers noticed several plastic baggies sticking out of a cardboard box in the back seat area of the SUV; the plastic baggies were "the kind that are used to package drugs." The officers found an exhaust fan motor inside the box, and, after a closer inspection of the fan motor, the officers found some tablets of ecstacy,[2] three vials of GHB,[3] and a small amount of methamphetamine (in a baggie) inside the fan motor.

Odom contends that the officers testified that they never saw Odom carry the box containing the fan motor and contraband to the SUV and that the officers discovered that Diana Moore ("Moore") was the registered owner of the SUV. He also contends that Moore's name was on the SUV's insurance card

---

[2] Ecstasy is the street name for methylenedioxy methamphetamine ("MDMA").

[3] "GHB" is gamma hydroxybutyric acid.

as a permitted driver and that she lived at the house with Odom, but that Moore was never questioned about the vehicle, the box, the fan motor, or the contraband. There were also no fingerprints or DNA taken. Additionally, Odom argues he never said that the box was his, and the officers admitted that "anybody" could have put the box with the contraband in the SUV. Lastly, Odom claims that the box was not "right next to" the black bag.

### B. Procedural Background

Odom moved for an instructed verdict of not guilty, which the trial court denied. Odom was subsequently convicted of (1) possession of a controlled substance of less than one gram (methamphetamine) and sentenced to two years' imprisonment; (2) possession of a controlled substance of one to four grams of MDMA and sentenced to eight years' imprisonment; and (3) possession of a controlled substance of four grams or more, but less than 200 grams of GHB and sentenced to twelve years' imprisonment. The trial court ordered Odom's sentences to run concurrently. This appeal followed.

### III. Standards of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443

4

U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We must presume that the fact-finder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party.

5

*Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly unjust. *Watson*, 204 S.W.3d at 414-15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id*. We may not simply substitute our judgment for the fact-finder's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result

6

is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, we must give due deference to the fact-finder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9.

An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

### IV. Analysis

In situations where the accused is not in exclusive possession of the location of contraband, the State is required to adduce beyond a reasonable doubt independent facts and circumstances that affirmatively link the accused and the contraband, that is, that he had knowledge of the contraband and exercised control over it. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); *Naquin v. State*, 607 S.W.2d 583, 586 (Tex. Crim. App. 1980 [Panel Op.]); *Hudson v. State*, 128 S.W.3d 367, 374 (Tex. App.—Texarkana 2004, no pet.). A non-exclusive list of factors has been developed when reviewing whether such affirmative links have been established. Those factors

7

include whether: (1) the contraband was in plain view or recovered from an enclosed place; (2) the accused was the owner of the premises or had the right to possess the place where the contraband was found, or was the owner or driver of the automobile in which the contraband was found; (3) the accused was found with a large amount of cash; (4) the contraband was conveniently accessible to the accused, or found on the same side of the vehicle as the accused was sitting; (5) the contraband was found in close proximity to the accused; (6) a strong residual odor of the contraband was present; (7) the accused possessed other contraband when arrested; (8) paraphernalia to use the contraband was in view, or found on the accused; (9) the physical condition of the accused indicated recent consumption of the contraband in question; (10) conduct by the accused indicated a consciousness of guilt; (11) the accused attempted to flee; (12) the accused made furtive gestures; (13) the accused had a special connection to the contraband; (14) the occupants of the premises gave conflicting statements about relevant matters; (15) the accused made incriminating statements connecting himself to the contraband; (16) the quantity of the contraband; and (17) the accused was observed in a suspicious area under suspicious circumstances. *Tucker v. State*, 183 S.W.3d 501, 510 (Tex. App.—Fort Worth 2005, no pet.); *Jenkins v. State*, 76 S.W.3d 709, 712-13 (Tex. App.—Corpus Christi 2002, pet. ref'd). This determination is made

8

on a case by case basis. *Jenkins*, 76 S.W.3d at 713. Concerning prosecutions for possession of controlled substances, it is not the number of links found between the defendant and the drug that is dispositive, but rather the logical force of all of the evidence. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). When deciding whether there is sufficient evidence to link the defendant to the controlled substance contraband, the trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005). These links connecting the accused to the controlled substance in a possession case do not need to be so strong as to exclude every other reasonable hypothesis except guilt, and these links ordinarily emerge from an orchestration of several factors and the logical force that they have in combination. *Rivera v. State*, 59 S.W.3d 268, 274 (Tex. App.—Texarkana 2001, pet. ref'd).

## V. Application

First, there is only slight evidence that the vehicle was not in the exclusive possession of Odom. A "Diana Moore" was a permitted driver on the insurance card found in the vehicle and was the person from whom Odom claimed to have recently purchased the SUV. No other evidence tied her to the SUV and there was no evidence of her direct possession of the vehicle before,

9

during, or after the vehicle search. Nevertheless, we will assume for purposes of this opinion, there was not exclusive possession by Odom.

As pointed out by the State, Odom made contradictory statements about the SUV: he claimed to own the SUV, he had drugs in his pocket, he was transferring items to the SUV from a garage through a partly open garage door when observed by the police, the drugs found in his pocket were contained in the same type of baggie that was found in the box in the SUV, and the black bag that he was witnessed putting into the SUV contained $184 in cash. Odom additionally concedes that his name was on the insurance card found in the vehicle and that methamphetamine was found in his pocket (as was a glass pipe).

The jury had to determine whether Odom intentionally or knowingly possessed the drugs in question, possession meaning actual care, custody, control, or management. The evidence presented to the jury met several of the affirmative link factors, including Odom's right to possession and ownership of the SUV, the place where the contraband was found, and a glass pipe and additional drugs on his person when arrested. *See Tucker*, 183 S.W.3d at 510; *Jenkins*, 76 S.W.3d at 712-13. From this evidence, and the other evidence listed above, the jury could have reasonably concluded that Odom intentionally or knowingly possessed the controlled substances located in the SUV. *See*

*Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 16-17.  And we cannot say, reviewing this evidence in a neutral light, that the jury's determination is clearly wrong and manifestly unjust, or that a different result is clearly suggested by the evidence.  *See Watson*, 204 S.W.3d at 414-15, 417.  Therefore, we hold that the evidence is both legally and factually sufficient to support the jury's verdict, and we overrule Odom's two points.

## VI.  Conclusion

Having overruled Odom's two issues, the judgment of the trial court is affirmed.

BOB MCCOY
JUSTICE

PANEL B:   GARDNER, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED:  May 8, 2008

11